STATE OF NEBRASKA, APPELLEE, V. ROSEY KENNY, ALSO KNOWN AS ROSEY KENNEY, ALSO KNOWN AS JIM KENNEY, ALSO KNOWN AS JAMES KENNEY, APPELLANT.

399 N.W.2d 821

Filed January 30, 1987.    No. 86-185.

Steven J. Reisdorff of The Law Office, P.C., for appellant.

Robert M. Spire, Attorney General, and Lynne R. Fritz, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

The appellant, Rosey Kenny, also known as Rosey Kenney, also known as Jim Kenney, also known as James Kenney, was charged by information in the district court for Saline County, Nebraska, with possession of a controlled substance other than marijuana, to wit: lysergic acid diethylamide (LSD), schedule I, in violation of Neb. Rev. Stat. § 28-416(3) (Reissue 1985). This is a Class IV felony, punishable by imprisonment of up to 5 years, or a fine of $10,000, or both imprisonment and fine. Following trial to a jury, Kenny was found guilty. Thereafter, the district court sentenced Kenny to incarceration in the Nebraska Penal and Correctional Complex for a term of not to exceed 3 years. It is from this conviction and sentence which he

now appeals.

While Kenny enumerates four assignments of error, in fact there are but three. The assignments of error are: (1) The court erred in overruling Kenny's motions to suppress; (2) The court erred in admitting, over objection, testimony concerning prior bad acts of Kenny; and (3) The sentence was excessive. We have reviewed the record in light of these assignments of error and find that they are without merit. For that reason the conviction and sentence are affirmed.

The record discloses that on September 9, 1985, a search warrant was issued authorizing Saline County authorities to seize a brown manila envelope which was addressed to Kenny and expected to arrive at the Dorchester, Nebraska, post office on that day, and to search the person who attempted to pick up the envelope. Pursuant to the search warrant, Saline County Sheriff Byron Buzek located himself at the rear of the post office where he could observe the post office boxes, including the box issued to Kenny. At approximately 2:30 p.m., Kenny arrived at the post office, removed the envelope, and walked out. As he walked across the street to a filling station, he threw the unopened envelope into an automobile. The sheriff followed Kenny into the filling station and arrested him.

The envelope was taken, pursuant to the warrant, and subsequently opened by Sgt. Vincent Brehm of the Saline County sheriff's office. Sergeant Brehm found inside two small plastic bags containing off-white paper with pictures of flowers on it, sectioned into 200 squares approximately one-fourth inch by one-fourth inch. The contents of the envelope were later tested by the Nebraska State Patrol laboratory and determined to consist of LSD.

Kenny's contention with regard to his first assignment of error is that the search warrant was obtained as the result of an earlier illegal search and seizure of a third person in California, and therefore, while the information contained in the affidavit used to obtain the search warrant was correct, it was the "fruit of a poisonous tree."

The record establishes that on July 5, 1985, an officer of the Santa Cruz County narcotics unit in Santa Cruz, California, seized property belonging to a Joe Hurley. Included in that

material seized was a letter from the appellant, ordering illicit drugs. It was as a result of this letter that the mail of Kenny was watched until a 9 1/4-inch by 6 3/4-inch brown envelope was mailed by Hurley to Kenny. The case against Hurley was dismissed by the California court, in part because the particular letter sent by Kenny to Hurley was held to be inadmissible as against Hurley. The letter, however, was received in evidence in the instant case, and Kenny's motion to suppress the letter and its envelope was denied. Officer Otis Pogue, a criminal investigator with the Santa Cruz County, California, district attorney's office, testified that on the afternoon of July 5, 1985, he arrested Hurley. He further testified that the letter and envelope, postmarked June 21, 1985, from Kenny, were in Hurley's possession at the time of his arrest. Pogue testified that he mailed the letter and envelope to Sheriff Buzek.

Kenny's claim that *his* fourth amendment rights were violated is simply misplaced. Kenny had no fourth amendment rights in the letter in Hurley's possession. To begin with, it has long been the rule that fourth amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted. In *Rakas v. Illinois*, 439 U.S. 128, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978), the U.S. Supreme Court was asked to hold that evidence seized by police during the search of an automobile in which the petitioner was a passenger but not an owner should be suppressed on the basis of the petitioner's fourth amendment rights. In rejecting that argument, the U.S. Supreme Court said in *Rakas, supra* at 133-34:

> We decline to extend the rule of standing in Fourth Amendment cases in the manner suggested by petitioners. . . . A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed.

This view is wholly consistent with the earlier view expressed by the U.S. Supreme Court in the case of *Alderman v. United States*, 394 U.S. 165, 174, 89 S. Ct. 961, 22 L. Ed. 2d 176 (1969), wherein it was said: "We adhere to these cases and to the general rule that Fourth Amendment rights are personal rights which,

like some other constitutional rights, may not be vicariously asserted."

Nor can Kenny contend that he had any expectation of privacy in letters which he posted in a public mailbox and sent through the mail, thereby losing complete control. In the case of *Ray v. United States Dept. of Justice*, 658 F.2d 608, 610-11 (8th Cir. 1981), the U.S. Court of Appeals for the Eighth Circuit, in discussing the question as to whether one had an expectation of privacy in a posted letter, said:

> The district court, relying on *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), held that Ray lacked standing to raise a Fourth Amendment claim for damages because the search and seizure involved the property and premises of another, Jerry Ray. *Ray v. United States Department of Justice, supra*, 508 F.Supp. at 726. The district court apparently concluded that James' letters to Jerry Ray became Jerry's property upon receipt and that James accordingly lost any expectations of privacy that he had in the letters. *Id.*

The court then went on to say, further, at 611:

> Although not cited by the district court, *United States v. Hubbard*, 493 F.Supp. 209 (D.D.C.1979), supports its conclusion. *Hubbard* involved the attempts of criminal defendants to suppress evidence, but its analysis of Fourth Amendment standing seems equally relevant here. *Hubbard* states that the test for Fourth Amendment standing is whether an individual, based on the facts and circumstances presented by that individual, has a legitimate expectation of privacy in the invaded place. *Id.* at 213-214 (citing *Rakas v. Illinois, supra*). Significantly for this appeal, the district court in *Hubbard* was "unable to understand how *sending* letters to a third party would form a basis for a legitimate expectation of privacy after their delivery. The reasonableness of one's privacy expectations would certainly be undermined by the act of relinquishing control." [Citation omitted.]

The reasoning of both the *Ray* decision, *supra*, and *United States v. Hubbard*, 493 F. Supp. 209 (D.D.C. 1979), appears to us to be valid and conclusive of the question raised here. Once

Kenny placed the letter in the mail, he lost control over the letter. He had no way of knowing who else might see the letter or what the recipient of the letter might do with it, once received. He may have hoped for privacy, but he had no "expectation of privacy" as contemplated by the fourth amendment to the U.S. Constitution. Having relinquished physical control over both the letter and the recipient, the most Kenny may have had were "high hopes." "High hopes" do not, however, constitute a "reasonable expectation of privacy." Having, therefore, no reasonable expectation of privacy and no independent fourth amendment rights in the mailed letter, he acquired no standing to claim a fourth amendment violation with regard to the illegal search and seizure of Hurley's premises. The letter therefore was properly used as the basis of the search warrant and properly received in evidence at Kenny's trial.

Kenny's second contention is that the court erred in permitting the introduction of the letter of June 21, 1985, as evidence of "prior bad acts." Brief for Appellant at 13. He argues that in order for the letter to have been introduced in evidence it must show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. He cites to us in support of his position that the letter was not relevant the case of *State v. Coca*, 216 Neb. 76, 341 N.W.2d 606 (1983). We believe that Kenny is in error in his interpretation of that case.

The provisions of Neb. Rev. Stat. § 27-404(2) (Reissue 1985) are not exclusive. While first providing that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person, the act then provides: "It may, however, be admissible *for other purposes, such as* proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." (Emphasis supplied.) The language of the statute is clear and unambiguous. The list which follows the introductory language is one of examples, and not restrictions. Evidence of other bad acts may be introduced under § 27-404(2) whenever the evidence is relevant, so long as it is offered to prove something other than the character of a person in order to show that he or she acted in conformity therewith.

In the case of *State v. Kern, ante* p. 177, 185, 397 N.W.2d 23, 29 (1986), we recently examined that entire issue, and said:

It is well established that § 27-404(2) is an inclusionary rule permitting the use of relevant other crimes, wrongs, or acts for all purposes except to prove the character of a person in order to show that such person acted in conformity with that character. Thus, § 27-404(2) permits evidence of other crimes, wrongs, or acts if such is relevant for any purpose other than to show defendant's propensity or disposition to commit the crime charged. [Citations omitted.]

We then went on further in *Kern, supra* at 185, 397 N.W.2d at 29, to say:

We have also observed that the admissibility of evidence concerning other conduct must be determined upon the facts of each case and that no exact limitation of time can be fixed as to when other conduct tending to prove intent to commit the offense charged is remote.

See, also, *State v. Robb, ante* p. 14, 395 N.W.2d 534 (1986).

The letter of June 21, 1985, was offered to show that Kenny intended to order and receive LSD and that the envelope received on September 9, 1985, was not an unsolicited package received by Kenny without his knowledge.

The relevancy of the letter of June 21, 1985, in which Kenny earlier ordered material from Hurley, is best established by Kenny's own brief. As one of Kenny's propositions of law he argues that the evidence was insufficient to establish beyond a reasonable doubt the elements of the crime. Specifically, he argues:

The simple truth herein is that Defendant was in possession of a brown manila envelope (Exhibit 14) for a few brief seconds and it was later discovered that the envelope contained Lysergic Acid Diethylamide (Exhibit 19).

There is no evidence introduced at the trial that indicated that the Defendant at anytime knew what was in the envelope. The only thing that Mr. Kenney did was simply go and get his mail on the date in question.

Without the alleged "prior bad act" letter there would

have been not [sic] evidence whatsoever that the Defendant had ever had any contact with any one in Santa Cruz, California.

Brief for Appellant at 16-17.

Without conceding that the case against Kenny could not have been established absent the letter, we do concede, as apparently does Kenny, that the letter was extremely relevant to establish that Kenny was not simply the recipient of an unsolicited letter from an unknown sender. The letter was extremely relevant to show prior course of conduct disclosing knowledge, to wit: an earlier ordering of LSD from the very same person who subsequently sent an envelope containing LSD. Our examination of the record leads us to the conclusion that the letter of June 21, 1985, was extremely relevant to establish knowledge and intent on the part of Kenny and was admissible as evidence of other prior bad acts under § 27-404(2).

That leaves us, then, only with the claim that the sentence imposed was excessive. We have repeatedly held that a sentence which is within the range of the statute will not be disturbed, absent an abuse of discretion. See, *State v. Bovill*, 223 Neb. 764, 393 N.W.2d 715 (1986); *State v. Whitehurst, ante* p. 174, 396 N.W.2d 288 (1986).

As we have noted, in the instant case the crime charged was a Class IV felony, punishable by a maximum of 5 years' imprisonment, or a fine of $10,000, or both imprisonment and fine. Thus, Kenny's sentence was well within the statutory limits.

An examination of the presentence investigation discloses no abuse of discretion, and therefore the sentence must stand. The verdict and judgment are therefore, in all respects, affirmed.

AFFIRMED.